Number 181388, United States v. Anthony J. Colon-Maldonado. Good morning, Mr. McCutcheon. Good morning. May it please the Court, Andrew McCutcheon, on behalf of Mr. Colon-Maldonado, I'd like to reserve three minutes for rebuttal, if I may. You may. The District Court in this case committed a series of errors that deprived Mr. Colon-Maldonado of a fundamentally fair final revocation hearing and led to an artificially inflated revocation grade determination and sentence. First, the District Court admitted unreliable, uncorroborated police complaints without considering Mr. Colon's right to confrontation and without the government offering good cause of any kind. Secondly, relying on those very same police complaints, the District Court determined beyond a preponderance of the evidence that Mr. Colon had committed a violation of Article 3.2, a substantive violation of Article 3.2 of Puerto Rico's domestic violence law. The government submitted no additional evidence, no video, no photographs, no sworn statements, no medical records, nothing to corroborate the allegations or support a substantive 3.2 offense. In the District Court's view, the fact that Mr. Colon was originally charged with a violation of 3.2 is sufficient to determine that he actually committed that conduct, and that position deprives defendants of anything close to a fundamentally fair final revocation hearing. After making those determinations, the District Court determined that Article 3.2 was a crime of violence and sentenced Mr. Colon Maldonado to 30 months. Well, on your first point, wasn't there unrebutted evidence that he struck his pregnant domestic partner? Your Honor, what Mr. Colon Maldonado was willing to admit to during the final revocation hearing was a violation of the elements of Attempted 3.1. I don't mean what he admitted to. I'm saying there was actual evidence, not evidence perhaps for a trial, but evidence for sentencing purposes that he struck his pregnant domestic partner. Are you referencing the government's arguments? Are you referencing statements made by counsel? I just would like to specifically respond to the Court's question. Well, the probation officer gave unrebutted testimony. Mind you, you're saying it's triple layers of hearsay, but I think that's what Judge Payette is referring to. The probation officer testified during the preliminary revocation hearing, not during the final revocation in any fashion or form. And what did not happen during that preliminary hearing was that the government did not call the victim or the lead investigator in the case. Sure, so it wouldn't work at trial. But why doesn't that work if it's unchallenged? It was challenged. It was challenged through cross-examination. And Mr. Colon Maldonado made clear during the final revocation hearing that he wasn't accepting a violation of Article 3.2. He intended to challenge any attempt by the government to insinuate that he had committed a violation of Article 3.2. But put that inside the articles. Did he ever say that he didn't strike her? Well, Mr. Colon Maldonado doesn't have the burden of proof. I didn't ask if he had the burden of proof. I asked a simple question. Did he ever say that he didn't strike her? During the final revocation hearing, no. He never admitted to striking anyone. And based on the record, he never admitted it. That was the question. I think the question was did he ever say that he did not strike her? In the negative? Yes. No. But he admitted specifically to the elements of 3.1 in state court. To the best of our knowledge and the information on the record, there was no allegation admitted in state court that he struck the victim at any point in time. And so that was the elements and that was the conduct that the defense was willing to admit for purposes of the final revocation hearing. What was the evidence in the state court? I'm sorry, Your Honor? What was the evidence in the state court? Is it in the record? No, Your Honor. Simply that he pled to the elements of Attempted 3.1. And if the government wanted to prove conduct beyond that, for example, if they wanted to prove that he struck this individual, they had every opportunity to present relative competent testimony or other evidence on that particular point. Didn't they put in two sworn complaints from the victim? No, Judge. It submitted two police complaints that made accusations, Your Honor, that were never accepted, accusations to other offenses. So the police complaints charged violations of Article 3.2 and Article 3.3. Mr. Colombo, I don't know, never pled to those violations. And the individual, we're not even sure if the individual who drafted. Time out because I think you're telling me my understanding of the record is wrong. And if it is, that's important. I had understood that a police report was filed, and that's cited at PB4 and at Blueberry 4 in appendix, and that it was accompanied by two sworn complaints from the victim, which indicated she used physical force and threatened her with bodily injury. And that's at page 65 and 67 of the appendix. And you're telling me those two sworn complaints aren't in the record? What is in the record are the complaints that contain the statute that's violated. So it's simply something akin to a charging document. There's nothing signed by the victim. There's no sworn statement, including a dissertation on what happened, that was provided by the victim. What we have here is simply a document that's signed by some sort of police officer who we don't know whether that person ever spoke to the victim. We don't know if he actually investigated the case or is simply receiving all this information hearsay. He drafted this complaint, which is similar to a charging document, and then filed it. That's what's on the record. There were no sworn statements that set forth the conduct that allegedly occurred in this case that were submitted by the government. That's one of the problems here. When we're looking to whether or not there's competent evidence to support the 3.2 determination, the government never sought to submit sworn statements prepared by the alleged victim or sworn statements prepared by the lead investigator in this case. They also never sought to admit medical documents, as I mentioned, videos, photographs of the alleged injuries, or anything of that nature, to provide any sort of preparation for this theory that they were advancing, that there was some sort of 3.2 violation committed. And so the record is completely devoid of any sort of competent evidence to support the notion that that offense was actually committed. And that's why our point is that if you can simply submit a police complaint, it's completely accusatory in nature, you're going to deprive a defendant of anything close to a final revocation hearing in which he can contest the evidence. If the court doesn't have any further questions on that issue, I would turn to our final issue, which is that Article 3.1 and 3.2 don't qualify as crimes of violence. If you look at the language of the statute under 3.1 and 3.2, the first element includes force, psychological violence, or intimidation. That element is overly broad on its face. It's also not divisible. We look to Mathis, and Mathis directs us to look to controlling state court authority. And here we have Ayala Garcia, which treats that first component as a single element, an overly broad element. And that, of course, would take 3.1 out of the reach of the crime of violence definition. Something I perhaps don't understand. You're saying that beating a pregnant woman, if it's established, if there's evidence in the record, is not a crime of violence? Your Honor, what we look to in order to determine a crime of violence is the elements of the offense. And here the elements of 3.1 are overly broad. So the actual conduct that may or may not have transpired in this case is irrelevant under the categorical approach for purposes of determining whether or not a crime of violence has been committed. But some of the circuits have pointed out, since we're looking at conduct here, we don't have to follow the full categorical approach. We can ascertain what the conduct was or the trial court can. So, for example, you could use the conduct like a Shepard document to select or isolate one of the elements. Or even with a divisible statute, you would normally have a Sixth Amendment problem with picking one of the divisible, indivisible portions. But instead, here in this non-Sixth Amendment setting, you can use the conduct to isolate one of the individual means that is, in fact, violent. So, at first, I would submit to the court that this court has already decided the issue of whether the categorical approach applies in the revocation context in Irby. That was cited in the brief, and this court did apply the categorical approach rather than any sort of notion that actual conduct should be the controlling factor. Right, but in Irby, the categorical approach produced a favorable response for the government. So there was no need. The issue of whether you could go beyond that and use fact of conduct was not at issue in Irby. Nevertheless, let's assume we put it. If Irby stops us, it stops us. Let's assume it doesn't, though. Why is the rationale put forward by some of those other circuits just as a matter of correct legal thinking not correct? Well, I think, first of all, Judge, the notion that we would be creating two different tests for prior conduct and current conduct, I think, leads to a result that the Sentencing Commission and most likely the Supreme Court did not intend. They intended a combination. Well, but you don't want to look to the Sentencing Commission because they have the application note that tells you to do just what these circuits said. Well, Your Honor, I think that the application note simply suggests that the district court's not stuck with the conduct that's admitted, for example, in a state court proceeding like here. So the district court could hold a full final revocation hearing, have the government present additional evidence, and if they want to prove conduct beyond what's been admitted to in state court, they can certainly do that. So I think that's what the application note is suggesting. The application note also directs the court's attention to 4B1.2, which requires the finding of an offense that has as an element the use or attempted use of force. So I think the application note is actually directing courts to apply the categorical approach. And you read that because you have reliance on the word offense as meaning the legally defined crime as opposed to the actual conduct. That's correct, Your Honor. And the Supreme Court's been a little ambiguous on that. They've told us both things in different cases. Judge, again, I would look to the language, again, on the application note, and then it directs you conclusively to 4B1.2, which, from the plain reading of that, insinuates certainly that a categorical approach should apply. And setting that aside, even if we look to each of these individual elements, assuming they're individual elements and not simply means of fulfilling one element, they're each overly broad. For example, force, for purposes of 3.1, can include de minimis force, such as slapping someone's buttocks. We cited a case in our brief that addressed that, and also spitting in someone's face. That case was raised at the district court level, and that obviously doesn't entail the violent physical force contemplated by Johnson in 4B1.2. Additionally, if you look at the language of the statute itself, force can include threats to property or grave emotional harm, so that renders it overly broad as well. Intimidation, the same, can include threats to property and emotional harm as well, and then obviously psychological violence doesn't apply as well. I see that my time is up, so unless the Court has any additional questions. Thank you. Thank you. Good morning, Mr. Kumpler. Good morning, Your Honor. Thomas Kumpler on behalf of the United States. In this case, in order to address the first issue, the Court properly revoked the defendant's, revoked him in this case, based on the facts that were actually admitted by the defendant, if you even look at it. What did he admit? He admitted that he attempted to commit a 301. Now, based on that, and looking at the fact that he never disputed that it was his girlfriend, his person, Jessica Almar, and also on top of that, he never disputed the fact that she was pregnant at the moment. So what does he admit? What they argued, actually they say was tethered. 31, 3.1 is tethered to 3.2. So based on that, we have an attempt to commit an abuse of a pregnant female, as what the Court basically determined. So do you agree with defense counsel then that that's all you've got? You don't have any statement by the witness at all? No, I disagree, Your Honor. In this case, if you look at actually docket entry 1161-1, which the Court has looked at or also known as 65 and 66 of the appendix of the defendant, what we have here was a sworn criminal complaint. And when you look at it, if you look at page, it describes what had happened in this incident where he grabbed her with his hands around the abdomen and took her cell phone away, grabbed her strongly by the hair, shook her, and she hit her head on the wall. I'm sorry, but the sworn criminal complaint is sworn to by the investigating officer. It's not sworn to by the complaining witness. Right, but if you look on the page 2, page 66, when that was done, with the Court there in this case, it indicates that, the check marks indicated that it was a police officer present and the female victim was present at the proceeding at the moment. But they weren't called. Pardon? They weren't called. Oh, in our case, no. But I'm saying as based on the evidence that was submitted, there was evidence submitted on what we had was a probation officer who testified, which she testified and had spoken to the victim herself and obtained information what had happened and spoke to the police officer, both. And here we had the police officer actually present at the preliminary hearing, but due to the incident of Irma occurring, the interpreter wasn't present in this case. So we were not able to put the officer who had actually directly spoken. So let me be clear. The chain here is the victim, something happened to the victim. The victim spoke to a police officer who swore out a complaint. Correct. Then a probation officer spoke to one or both of them? Both of them. Both of them. And then the probation officer alone testified at the revocation proceeding. Correct. And we submitted the criminal complaint. That was submitted. It was submitted. So your proposition is given the evidentiary standards, the replicable to reverberation proceeding,  That is correct, Your Honor. So if that's correct and we can read contact, who cares about whether 301 was reclassified into a 302 or not? It doesn't matter. That's the government's position. I mean, either it's 301 or 3.2. It doesn't matter because there was physical contact. Once you get to 301 or 302, though, you then face two hurdles because if, say, it's 301, if it's overbroad on its face, so you need to show either that it's divisible and you can pick an element using conduct, or you've got to show that even if it's indivisible, you could still pick a means using conduct as a matter of law. Well, but in this case, what we're saying is, and you're raising up Irby in this case, it's government position is that Irby never addressed the issue that we're presenting before this panel or was never presented, it looks like, before Irby and that under the guidelines, you look at the actual conduct. And that doesn't appear to have been presented to Irby. It automatically assumed and just applied like Judge indicated before. Okay, and what do you say we can use the actual conduct to do in the case of let's assume 301 is overly broad and indivisible? And indivisible, then we would not have an offense that would be proven. But it's a government's position that you look at the actual conduct, and based on the actual conduct, the court can determine whether there was a crime of violence in this case. Or an alternative, it's a government's position as when you're looking, what most circuits or several circuits have done, like Carter, the Third Circuit, what they have been doing is they have been looking at the statute itself, just taking does it have a crime of violence, even if it is a non-divisible or not. Or is not, they're not applying categorical approach. I'm not sure I understand what you said. Let's take 301. Let's assume that, let's take first, assume for your benefit that it's divisible. Yes. And that it has one element that makes it a crime of violence, but it's got another elementary prong that would not be a crime of violence. Correct. Were this in the ACCA context, we could pick one of those two by using a Shepard document. Correct. Here, though, we're assuming for the moment that there's no Shepard document. Is it your proposition that you could use the conduct that is evident to pick one of those elementary prongs? Exactly, Your Honor. That is the position. Let's now assume less favorably of the government that it's indivisible. So instead of two elemental prongs, we have two indivisible means. That would normally be a roadblock. It would normally end the inquiry under ACCA. How do you say we proceed here if we find this to be both overly broad and indivisible? Well, that is why we're looking at Golden in the cases that we cited. I mean, what you look is then only at the actual conduct. So you're saying we could take the conduct, do what we could not do in the ACCA conduct, which is select and isolate one of the means being a means that is violent. Exactly. That's what Golden did in this case. That is what, when looking at several cases that the government has cited in its brief, that's what they did. They looked at whether actual conduct did have a force of violence. It just seems to me, then, if that's your position, then I guess I'd go back to the evidence that was actually presented. And even though it's certainly a lesser standard than the evidentiary standards at trial, I mean, there was an objection here to the sufficiency of the evidence that was produced at the first hearing, which the judge in the final revocation proceeding relied upon. And the probation officer testified there were certainly inconsistencies in the police report versus what the actual folks spoken to said to the probation officer. Well, I respectfully disagree. If you look at it, yes, actually the magistrate judge, when it made its determination down below, it only made its determination as to it found that there was a 3.2 violation, in which, if you look at it even, that is what the state court complaint found. If you look at the documentation provided, 66, 67, or 65, 66, 67, 67, and 68, excuse me, show they didn't find the threats credible, and nor did the magistrate judge. But what they did find was credible was the abuse that was caused in this case. So they all have been consistent, the local court down below, the magistrate judge after hearing the testimony of the probation officer, and the judge adopting it. So we do have a consistency, and yes, there may have been some inconsistency, or the probation officer couldn't answer some of the questions. I mean, one of the questions was, where was this officer from? What district? Salinas, Guayama. Your Honor, in this case, both of those are next to each other. I mean, it could be either Guayama or Salinas. If you look, actually this witness, the, excuse me, the victim in this case was from Salinas, and the officer was from Guayama, and why do we know that? It's because based on, again, you look at 66, the appendix, that is where it's stated the charging agent is from Guayama. So I mean, there were some inconsistencies, however, the magistrate judge found it credible, and then found credible that there was an abuse here. There was an objection to not calling, what was his name, the Malavi? Alamani, excuse me. Oh, Malavi, the officer, excuse me. Well, actually, what happens, you. I understand that Irma had prevented the interpreter from being present, but that doesn't mean that the case couldn't have been continued to give the defendant a chance to confront that witness. That was at the preliminary hearing, Your Honor. Yes, that is correct. I mean, it could have, but they didn't ask for a continuance. Yes, they didn't ask for a continuance in this case. If you look at the record. Well, they just objected. They just objected, didn't ask for a continuance, and the court relied. Nor did the government. No, nor did the government. But in this case, you also have to look at the fact that also there was, I mean, when you look, you can rely on hearsay testimony and everything else, and you can rely on documentation. That is what Morrissey states. It's got to be reliable. So the question is, was there sufficient and issue of reliability for the hearsay evidence that was. . . I think so, because these were sworn declarations. This was actually what was submitted to the judge down below, actually in the Salinas area. Excuse me. Actually, yes.  It was sworn. Sworn by the investigator. By the investigator. Not the complaining witness. Right. That is correct. But still, it is a sworn complaint, and I cited Jones. . . Well, I could swear to anything, but we have rules about the. . . Yes. Having to have personal knowledge of the contents of an affidavit, so the fact that it was sworn to doesn't mean much. Yes, but, Your Honor, you have to look. . . This is not the context of a trial. This is a context of a revocation hearing where hearsay can be admissible. You don't have the federal rules of evidence. . . Reliable. Pardon? There's still a reliability component. Right, and that's why we're saying it was reliable, because it's a sworn statement, and there's case law that affect FANF, which is from the First Circuit, and some other ones that say you can rely on sworn statements in cases. I mean, it can be affidavit. Look at Marcy. It even states you can rely on letters, affidavits, other things in order to have revocation. There's a 2015 Ninth Circuit case, U.S. v. Willis. Yes. That holds in favor of the categorical approach. Yes. Why do you have to say that? Well, Your Honor, I think in this case it's wrong, because you have to look in the context of a revocation. The reason why I state what they do is they do actually kind of the same thing twice. They look at whether, I mean, one, when looking at the guidelines, you're supposed to apply the actual approach, and what they're doing is they're looking at the context of first, in the revocation proceeding, you determine what is an offense if there is offense committed. You know, was it a state, local crime? And then what they do is they have the revocation, and then they do it again. You look at this again, the crime, what type of crime it was, and then you look at what was, was it a crime of violence or not, and they applied here then the aspect of categorical approach. Now, here, like I state, what did the guidelines state? They say you apply to determine the grade of violation. You look at the actual conduct. Well, when you add to that the fact that in Irby we used the categorical approach, what does that do to your arguments? Well, I think because Irby didn't actually look at the categorical, I did not look at, excuse me, actual conduct and determine that issue directly. So I think still you have to look at what the guidelines state. I thought they held the approach, we held that the categorical approach, quote, to determine whether a given offense constitutes a crime of violence. Why does that language cover the present situation? Well, I think it doesn't address what the guidelines did in this case, what the guidelines state, where to determine the grade of violation, you have to look at what is the actual conduct. Because if you look, guidelines are, excuse me, if you look at revocation and the nature of the revocation, they have each, actually, it is, I'll say, a little bit more relaxed standard, because it's not like when you're looking at the guidelines where there's a prior conviction, when you're looking under the immigration aspect, or you look under the firearms aspect, because it says a prior conviction. Here, what we're arguing is, if you look at it, it's more relaxed. Even they have their own guideline range, their treatment of how, they had the opportunity to determine if it was going to be a regular sentencing, or do we have to look at the actual conduct, or anything else. So the nature of revocation is totally different than sentencing. And that's why what we're saying is, I think, we have to focus on the fact that actual conduct should be applied. If not, then what do you do? You have also what Carter, Third Circuit, has been doing. They look at the offense itself, what was the conduct in relation to, is there an element of violence or crime of violence involved in this case. Any other questions? We'll rest our briefs. Thank you. Thank you. I'd like to just make two brief points. First, at the preliminary hearing, the magistrate judge is simply charged with finding probable cause to determine if an offense has been committed beyond the probable cause standard. It's not a proof positive determination regarding, a determination beyond a preponderance of the evidence. So to look to that as some sort of, you know, solid finding that Mr. Colombo had committed a violation of 3.2, I think is misguided. Second, the government's reliance on Carter is also misguided. Carter holds that a revocation court can consider a defendant's actual conduct, but only in determining whether or not they have broken the law, and thus the terms of their supervised release. It then holds that it is, quote, not enough to say that a defendant's actions were simply violent or forcible without pointing to a crime containing those same elements. And that's simply another way of saying the categorical approach would apply. And then I would disagree with the government's assertion that the Third Circuit, or the Ninth Circuit, rather, is the only circuit to suggest that the categorical approach applies in the supervised release context. If you look to the Fourth Circuit in United States v. Reed and United States v. McMillan, they unequivocally hold that the question of whether or not a supervised release violation is for a crime of violence is determined by a categorical approach. So I think this court is consistent with the majority of the circuits that are holding that the categorical approach does apply in the revocation context. So in light of that, we'd ask this court to reverse and remand for resentencing on a Grade B violation in front of a different district court judge, and with the government being prevented from having a second bite at the apple and presenting additional evidence in furtherance of their accusations. Thank you. And what would be the basis if that last proviso? Regarding a different district court judge or the government not being allowed to present additional evidence? The latter. So here the government had every opportunity during the final revocation hearing to present additional evidence. In fact, defense counsel asked, I don't know what the government intends to do during the final revocation. That was a blanket invitation to present additional competent evidence on this issue if they so choose. Instead, they went with this theory with the police complaints being some sort of proof positive that a 3.2 violation was committed, and so they shouldn't be given a second chance to prove these enhancements on remand. Thank you, Your Honor. I yield my remaining time.